# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 21-0268V

|  |  |
|---|---|
| SCOTT STERLAND, | Chief Special Master Corcoran |
| Petitioner, | Filed: August 20, 2025 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On January 7, 2021, Scott Sterland filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine he received on September 28, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner more likely than not suffered the residual effects of his injury for more than six months, that he has provided

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

preponderant evidence of onset within 48 hours, and that he has satisfied all of the other requirements of a Table SIRVA claim. Petitioner is therefore entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

On October 26, 2023, Respondent filed his Rule 4(c) Report contesting entitlement. ECF No. 30. Respondent argued that Petitioner has not met the statutory severity requirement, and that he cannot show that the onset of his pain occurred within forty-eight hours of vaccination. Rule 4(c) Report at 5-9. Thereafter, Petitioner filed a Motion for Ruling on the Record ("Mot.") on March 3, 2024. ECF No. 34. Respondent filed a response ("Resp.") on July 10, 2024 and Petitioner filed a reply on August 20, 2024. ECF No. 37, 39.

The matter is now ripe for adjudication.

## II.    Relevant Facts

Petitioner was 63 years old when he received a flu vaccine in his left deltoid on September 28, 2019, in Arizona. Ex. 1 at 1. Petitioner saw his primary care provider ("PCP") ten days later with complaints of left arm pain "from his flu shot." Ex. 2 at 5-6.

Approximately one month later, on November 5, 2019, Petitioner saw an orthopedist. Ex. 3 at 19-21. He reported "pain in his left shoulder with an onset on 09/28/19 . . . after having a flu shot." *Id*. at 20. On exam, he exhibited weakness and mild tenderness of the left deltoid. *Id*. at 21. An MRI and an EMG were ordered. *Id*. The MRI showed a partial tear of the supraspinatus, degenerative changes of the acromioclavicular joint, moderate bursitis, and tendinosis. *Id*. at 29. The EMG was normal. *Id*. at 25.

Petitioner had surgery on his left shoulder on December 12, 2019. Ex. 3 at 7-8. During surgery, platelet-rich plasma was injected into the rotator cuff repair. *Id*. at 8. He returned to the orthopedist five days later wearing an immobilizer and with minimal pain. *Id*. at 18-19. He returned two weeks later for another post-operative evaluation with complaints of aching pain and difficulty sleeping. *Id*. at 16. He was given home exercises. *Id*. at 16-17.

On February 3, 2020, Petitioner returned for a two-month post-surgical follow-up. Ex. 3 at 12. He reported limited range of motion and a "continued ache." *Id*. at 14. He was referred to physical therapy, which he began physical therapy on February 7, 2020. *Id*.; Ex. 5 at 11. He had one additional PT session on February 10, 2020. *Id*. at 20. Petitioner explained that the physical therapy provider was open only three days per week and that he had to take a new job that required travel out of town, making scheduling difficult. Ex. 8 at ¶13.

Petitioner returned to the orthopedist on March 9, 2020, reporting that he had stopped physical therapy due to the difficulty with scheduling. Ex. 3 at 10-11. At that time, his "range of motion was limited at the extremes" and he was unable to play golf. *Id.* at 11. He was referred to a different physical therapy practice and instructed to follow up in one month "to assess progress." *Id.* Petitioner states that "about that time, COVID-19 kicked in and everything was shutting down." Ex. 8 at ¶13. He "continued to do stretching at home and on the road." *Id.* at ¶14.

Seven months later, Petitioner saw his PCP on October 2, 2020. Ex. 6 at 9-10. Left shoulder pain was noted as a diagnosis, however, no treatment was recommended. *Id.* at 10. He returned on December 18, 2020 for an annual exam. *Id.* at 6. Again, left shoulder pain was documented as a diagnosis, but no treatment was recommended. *Id.*

Petitioner saw his orthopedist for right knee pain on March 31, 2021, and on April 13, 2021. Ex. 7 at 20, 23-24. There is no mention of shoulder pain at those appointments.

On March 10, 2022 – approximately two years after his previous shoulder treatment - Petitioner returned to his orthopedist. Ex. 7 at 16. The chief complaint was "left shoulder problem." *Id.* On exam, Petitioner had full range of motion, but "discomfort at the extremes" and positive impingement signs. *Id.* at 17. A second MRI was ordered. *Id.*

No further treatment records have been filed.

## III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1).

"Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

4

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act § 11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. § 13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## IV.    Findings of Fact

### A.  *Severity*

To establish six months of residual symptoms, Petitioner must demonstrate that they continued until at least March 28, 2020. There is no dispute that Petitioner sought treatment for his shoulder pain through March 9, 2020 (five months and 11 days after vaccination), and then did not seek shoulder-specific treatment again for approximately two years. Respondent argues that this gap in treatment defeats severity, and that Petitioner's attempts to explain it are "not sufficiently credible and compelling to overcome the objective record evidence." Resp. at 6.

Respondent seems to suggest that Petitioner must prove continuous symptoms through the *entirety* of a gap in treatment in order to satisfy the severity requirement. But the Act requires only that he prove that his symptoms lasted for 19 days beyond his orthopedist appointment on March 9, 2020. The record of that visit documents ongoing symptoms (limited range of motion), and that Petitioner's limitations were severe enough that he could not play golf. Ex. 3 at 11. He was referred to a different physical therapy practice and instructed to follow up in one month "to assess progress." *Id*. Thus, at that time, Petitioner continued to experience symptoms that impacted his life, and his

Case 1:21-vv-00268-UNJ    Document 42    Filed 09/22/25    Page 6 of 7

orthopedist believed that he required treatment for at least an additional month, if not more.

Petitioner stated that he was unable to receive physical therapy treatment from the first provider to whom he was referred due to limited hours and his new job. Ex. 8 at ¶13. Petitioner's medical records corroborate his claims. *See* Ex. 3 at 10-11. He further noted that once he had a referral to a new provider (which he received on March 9, 2020), the Covid-19 Pandemic impacted his ability to get treatment. *Id*. As most Pandemic shutdowns across the country began in mid-March 2020, I deem this a credible explanation for why he did not continue to treat the shoulder pain at that time.

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on this issue – at least that he continued to suffer symptoms for an additional 19 days from March 9, 2020 through March 28, 2020. However, the almost two-year gap in treatment, during which Petitioner treated other conditions, including right knee pain, undercuts the severity of the injury – and is a significant factor when determining damages in this case.

B. *Onset*

Respondent next argues that Petitioner has not established Table onset because he "had no documented visits to a medical provider within 48 hours of his flu vaccination," and notes that "the record documents that Petitioner first presented to his PCP on October 8, 2019, ten days after vaccination." Resp. at 7.

Respondent's argument ignores several medical records that either relate Petitioner's pain to his flu shot, or explicitly state onset occurred within 48 hours. *See* Ex. 2 at 5-6 (complaints of left arm pain from his flu shot that was worsening); Ex. 3 at 20 (reporting "pain in his left shoulder with an onset on 09/28/19 . . . after having a flu shot."). Petitioner's medical records corroborate onset beginning within 48 hours after vaccination, and there is no evidence suggesting a different onset. Further, Respondent's suggestion that petitioners must seek care *within* 48 hours of vaccination is not only contrary to what this element requires, but would impose a burden of proof far above a preponderance of evidence, and one that very few petitioners could meet.

Accordingly, I find there is preponderant evidence to conclude that the onset of Petitioner's pain began within forty-eight hours of his vaccination.

## V.    Ruling on Entitlement

### A.    *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that his pain began within 48 hours of his vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i), (iii-iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that he suffered a Table SIRVA injury.

### B.    *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, he need not prove causation. Section 11(c)(1)(C). However, he must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination in his left deltoid on September 28, 2019 in Arizona. Ex. 1 at 1; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that he has not filed any civil action or received any compensation for his vaccine-related injury, and there is no evidence to the contrary. *See* Ex. 8 at ¶24; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master